**BROWN v. CRAWFORD, Warden.**

No. 541.

United States District Court
E. D. North Carolina, Raleigh Division.

July 19, 1951.

Herman L. Taylor, Raleigh, N. C., Hosea V. Price, Winston-Salem, N. C., for petitioner.

Ralph Moody, Asst. Atty. Gen. of North Carolina, R. Brookes Peters, Jr., Gen. Counsel, State Highway & Public Works Commission, Raleigh, N. C., for respondent.

GILLIAM, District Judge.

The petitioner was convicted of the capital offense of rape in the Superior Court of North Carolina, sitting in Forsyth County, and thereupon sentenced to death as provided by the North Carolina statute. Before pleading to the indictment the petitioner moved to quash upon the ground that there had been systematic and arbitrary exclusion of Negroes solely on account of race. The Court heard evidence from the petitioner and afforded him and his counsel full and fair opportunity to substantiate the contention. Upon such evidence the trial Court ruled against petitioner and denied the motion. The evidence and conclusion of the trial Court are in the record.

During the trial alleged statements of petitioner were offered by the State and objected to by petitioner on the ground that such statements were involuntary and, therefore, incompetent.

Following the North Carolina law and practice in its Courts, the jury was excused, petitioner's counsel was permitted to cross-examine the witnesses to whom the statements were made, petitioner gave his version of the conditions under which the statements were made, and petitioner was also allowed full opportunity to present such evidence as he wished in this respect. The Court ruled that the statements were voluntarily made, overruled the objection, and the statements were admitted for the jury's consideration. The evidence and the conclusion of the trial Judge are in the record.

Upon appeal to the Supreme Court of North Carolina, the petitioner assigned as errors both the ruling of the trial Court in overruling the motion to quash the indictment and the admission of the confessions as evidence. The Supreme Court of North Carolina upheld the conviction and affirmed the judgment, saying in its opinion: "A person accused of crime is entitled to have the charges against him performed by a jury in the selection of which there has been neither inclusion nor exclusion because of race. * * * This, the defendant has had in respect of both the grand and petit juries which performed in the case, or, at least, the contrary in respect of neither has been made to appear on the record. Hence, his claim of jury defect or irregularity is unavailing"; and "The only basis of challenge to the competency of defendant's confession is that he was under arrest, being held without warrant, and was in custody at the time it was given. These circumstances, taken singly or all together, unless they amounted to coercion, were not sufficient in and of themselves to render a confession, otherwise voluntary, involuntary as a matter of law and incompetent as evidence. * * *' After preliminary investigation, pursuant to the procedure outlined in State v. Whitener, 191 N.C. 659, 132 S.E. 603, the trial court ruled the confession to be voluntary and permit-ted the solicitor to offer it in evidence against the prisoner. * * * The ruling is fully supported by the evidence * * *. The contentions of error in its admission are without force or substance."

A petition for writ of certiorari was then filed in the Supreme Court, assigning as ground the two alleged errors presented to the Supreme Court of North Carolina, and on May 28, 1951 this petition was denied by order containing this notation: "Mr. Justice Black and Mr. Justice Douglas are of the opinion that certiorari should be granted."

It is not asserted or even suggested by the petitioner that adequate remedies are not provided by North Carolina law to correct the wrongs about which he now complains; in fact, it must be admitted that such remedies existed and that he and his counsel took full advantage of them. It cannot be maintained, in fact, it is not even alleged, that petitioner was in any way or to any extent limited or restricted in his resort to such remedies. No one, upon the record, would conclude that the action of the State Courts in deciding the questions now raised was indifferently or lightly considered. The decision in each instance was reached after painstaking and careful procedure in accordance with law and practice and only after petitioner had had his full say. The petitioner has had his day in Court and his present positions have been rejected by a Court which had and did not lose jurisdiction and on a record which seems to demonstrate that petitioner was given a fair and impartial trial, in which he was accorded all rights guaranteed to him by the federal Constitution and dictated by the principles of justice. In addition, the Supreme Court of the United States has refused to review such action of the State Court. The record does not present any unusual situation which would justify the issue of the writ and, therefore, the petition for such writ has been denied.

It would serve no good purpose to review the cases. Two cases decided by our Circuit Court of Appeals clearly support, it seems, the conclusion reached. These are: Stonebreaker v. Smyth, 4 Cir., 163 F.2d

868

498, 499, and Adkins v. Smyth, 4 Cir., 188 F.2d 452. In the latter, quoting with approval from the former, the Court said: "We are confronted at the outset with the fact that the case presented by petitioner is precisely the same as that in which relief was denied by the Virginia courts and in which certiorari was denied by the Supreme Court of the United States. The rights of petitioner were fully presented in that case and the Virginia courts had full power to grant the relief asked, had they thought petitioner entitled to it. The facts were fully before the Supreme Court of the United States on certiorari; and proper respect for that court compels the conclusion that if it had thought that the record showed a denial of petitioner's constitutional rights, certiorari would have been granted and petitioner would have been afforded relief. While action of the Virginia courts and the denial of certiorari by the Supreme Court were not binding on the principle of res judicata, they were matters entitled to respectful consideration by the court below; and in the absence of some most unusual situation, they were sufficient reason for that court to deny a further writ of habeas corpus. It would be intolerable that a federal district court should release a prisoner on habeas corpus after the state courts have refused him relief in precisely the same case on a similar writ and the United States Supreme Court has refused to review their action on certiorari. This would be, in effect, to permit a federal district court to review the Supreme Court of the United States as well as the highest court of the state."

There appears no semblance of reason for a departure from the general rule laid down in these two cases.

An order will be entered denying the petition for writ of habeas corpus and vacating the stay of execution of judgment in the State Court which was heretofore entered.

### Findings of Fact

Upon the petition, the answer thereto, and the exhibits filed by the respondent, the Court finds these facts:

1. On the 2nd day of July, 1951, the petitioner filed in this Court a petition for a writ of habeas corpus alleging that he is being unjustly and unlawfully held in custody by the respondent by virtue of a judgment and sentence of death imposed upon him by the Superior Court of North Carolina sitting in Forsyth County, and praying that he be relieved of such unlawful detention, imprisonment and sentence of death; upon filing of the petition an order was entered requiring respondent to show cause on July 5, 1951, why such writ should not issue, and on the return date respondent appeared through counsel and filed answer denying that the detention of petitioner was unlawful and praying that the writ be denied on the face of the record itself. In support of his prayer that the writ be denied and the petition dismissed, the respondent, without objection, introduced the following exhibits: No. 1. Record on Appeal to the Supreme Court of North Carolina; No. 2. Petition to Supreme Court of the United States; No. 3. Attested Copy of Order Denying the Petition; No. 4. Addendum to Record in the Supreme Court of North Carolina; No. 5. Defendant's Brief Before the Supreme Court of North Carolina; No. 6. State's Brief Before the Supreme Court of North Carolina; No. 7. State's Brief Opposing Petition for Writ of Certiorari; No. 8. Official Advance Sheets Reporting Decision of Supreme Court of North Carolina.

2. At September Term, 1950, of the Superior Court sitting in Forsyth County, the petitioner was indicted by a grand jury drawn from the body of that County for the crime of rape, and, in accordance with the North Carolina statutes and the practice in the Courts of that State, a special venire was drawn from the regular jury boxes of the County to appear on the 12th days of September, 1950, as a panel from which the trial jury might be selected.

3. Before the selection of the jury, and before pleading to the bill of indictment, the petitioner through his counsel, Mr. Hosea Price of the Forsyth County Bar, lodged motion to quash the indictment upon the ground that it "was drawn with a view to and purpose in mind of systematically limiting representation thereon of negroes or persons of African descent" and "in a

manner which violates the Constitutional rights of this defendant". Thereupon, the trial Judge proceeded to hear evidence on the motion and the petitioner was afforded a full and fair opportunity to offer such evidence as he desired; the evidence in support and opposition to the motion is fully stated in the Record on Appeal to the Supreme Court, beginning on page 22 and ending on page 49; after a full and impartial hearing the trial Judge concluded that the petitioner had not sustained the motion, and it was denied. The Court found the facts specifically, and the findings and conclusions of law are set out in the Record on Appeal to the Supreme Court of North Carolina, beginning on page 49 and ending on page 52. The petitioner excepted to the order.

4. Thereupon, a trial jury was selected according to North Carolina law and practice from the special venire theretofore drawn from the jury boxes, and the jury found the petitioner guilty of rape as charged without recommendation of mercy, as permitted by the North Carolina law, and petitioner excepted.

5. When judgment upon the verdict was prayed by the State, the petitioner moved in arrest, alleging for the first time the additional ground in support of the earlier motion to quash "that the jury commissioners did not prepare and hand over to the Clerk of the County Commissioners a list of other qualified citizens whose names do not appear on the tax lists as required by General Statute 9, subsection 1". This motion was overruled and petitioner excepted.

6. Upon the verdict the Court sentenced the petitioner to death, as required by the North Carolina statute.

7. During, the trial the State offered to put in evidence an alleged statement made by the petitioner, containing certain damaging admissions, and upon objection entered the Court in the absence of the jury and, in accord with North Carolina law and practice, heard evidence to determine whether such alleged statements were voluntary; after a full hearing, during which petitioner was afforded a fair opportunity to present such evidence as he desired and after argument the Court concluded that the statements were voluntarily made and admitted them for the consideration of the jury. The petitioner excepted. The evidence bearing on this question, together with the Court's finding, are set out in the Record on Appeal to the Supreme Court of North Carolina, beginning at page 94 and ending on page 133.

8. From the judgment the petitioner, with permission of the Court, appealed in forma pauperis to the Supreme Court of North Carolina, assigning, among others not here pertinent, errors as follows: "No. 1. The Court erred in overruling the defendant's motion to quash the bill of indictment against the defendant * * *" and "No. 3. The Court erred in its ruling that the statements made by the defendant which purported to be a confession were freely and voluntarily given, and that same was competent evidence * * *."

9. The Supreme Court of North Carolina, at its Fall Term, 1951, affirmed the judgment of the Superior Court, State v. Brown, 233 N.C. 202, at page 206, 63 S.E.2d 99, at page 101, stating: "A person accused of crime is entitled to have the charges against him performed by a jury in the selection of which there has been neither inclusion nor exclusion because of race. * * * This the defendant has had in respect of both the grand and petit juries which performed in the case, or, at least, the contrary in respect of neither has been made to appear on the record. Hence, his claim of jury defect or irregularity is unavailing". In the opinion it is also stated with respect to the assignment of error in admitting the confession: "The only basis of challenge to the competency of defendant's confession is that he was under arrest, being held without warrant, and was in custody at the time it was given. These circumstances, taken singly or all together, unless they amounted to coercion, were not sufficient in and of themselves to render a confession, otherwise voluntary, involuntary as a matter of law and incompetent as evidence. * * *

"After a preliminary investigation, pursuant to the procedure outlined in State v. Whitener, 191 N.C. 659, 132 S.E. 603, the

870

trial court ruled the confession to be voluntary, and permitted the solicitor to offer it in evidence against the prisoner. * * * The ruling is fully supported by the evidence * * *. The contentions of error in its admission are without force or substance".

10. Following the decision of the Supreme Court of North Carolina, affirming the judgment of the trial Court, the petitioner filed petition in the Supreme Court of the United States for writ of certiorari, alleging "violation of the rights of the defendant as guaranteed him under the fifth and fourteenth amendment to the Constitution of the United States, in that members of said grand jury were selected and drawn with a view and purpose of systematically limiting the representation thereon of persons of the negro race * * * with the result that petitioner and members of his race are unlawfully discriminated against"; and that "the State was allowed to introduce into evidence statements of petitioner in the nature of confessions of the alleged crime". On May 28, 1951, this petition was denied with the notation: "Mr. Justice Black and Mr. Justice Douglas are of the opinion that certiorari should be granted".

11. Petitioner is a member of the Negro race.

12. The facts found by the trial Judge, in respect to the composition of the grand jury, are supported by the evidence before him, and these findings and the conclusion thereon are adopted as findings in this respect, and the facts found by that Court in respect to the question of admission of statements made by the defendant are also supported by the evidence, and these findings and the conclusions thereon are likewise adopted.

13. The petitioner was represented by experienced and capable counsel at every stage of the proceedings in the State Courts, and petitioner and his counsel were given full and fair opportunities to present evidence and argument with respect to the two alleged violations of his Constitutional rights, which were there raised and adjudicated and which he now attempts to raise again.

14. The remedies provided by the law of North Carolina through resort to its Courts afforded to petitioner a full and fair adjudication of the federal questions now raised.

Conclusions of Law

Upon these facts, the Court concludes:

1. That the record and findings thereon present no unusual situation, and a respectful consideration for the action of the North Carolina Courts and the denial of certiorari by the Supreme Court of the United States requires that the petition for writ of habeas corpus be denied and that the petition be dismissed.

2. That the stay of execution under the judgment against the petitioner in the State Court should be vacated.