**UNITED STATES of America,
Appellee,**

v.

**Robert S. SCIOLINO, Appellant.**

**No. 175, Docket 74–1826.**

United States Court of Appeals,
Second Circuit.

Argued Sept. 30, 1974.

Decided Oct. 25, 1974.

Peter L. Parrino, Buffalo, N. Y. (Parrino & Cooper, Buffalo, N. Y., of counsel), for appellant.

Peter B. Krauser, Atty., Dept. of Justice, Washington, D. C. (John T. Elfvin, U. S. Atty., W. D. N. Y., Shirley Baccus-Lobel, Atty., Dept. of Justice, Washington, D. C., of counsel), for appellee.

Before HAYS, ANDERSON and MANSFIELD, Circuit Judges.

MANSFIELD, Circuit Judge:

After a jury trial in the Western District of New York before Lloyd F. MacMahon, Judge, appellant was acquitted of one count charging him with forcibly impeding and interfering with an Internal Revenue Service agent in the performance of his official duties, in violation of Title 18 U.S.C. § 111.[1] However he was convicted on a second count which charged him with endeavoring by threats of force to intimidate and impede the IRS agent in the performance of his duties, in violation of Title 26 U.S.C. § 7212,[2] and sentenced to serve three months imprisonment followed by nine months probation and to pay a fine of $3,000. The principal issue raised upon this appeal is whether there was sufficient evidence of an implied threat of force to sustain the conviction. We hold that there was and affirm.

Viewed in the light most favorable to the government, United States v. McCarthy, 473 F.2d 300, 302 (2d Cir. 1972); United States v. Castellana, 349 F.2d 264, 267 (2d Cir. 1965), cert. denied, Pagano v. United States, 383 U.S. 928, 86 S.Ct. 934, 15 L.Ed.2d 847, rehearing denied, 384 U.S. 923, 86 S.Ct. 1368, 16 L.Ed.2d 444 (1966), the evidence reveals that on August 7, 1972, Internal Revenue Agent Thomas S. Shea, while examining records in the course of a tax audit of Main Chrysler-Plymouth Corporation at its offices in Buffalo was startled by a flash of light when appellant, president of the company, took a close-up flash photograph of Shea. Asked by Shea why he had taken the picture, appellant replied "That's for posterity, so I can show it around and say this is the guy." Shea protested, pointing out that he had not consented to being photographed. At first appellant asserted his right to do so regardless of Shea's consent but later in the day apologized, attributing his conduct to medication taken for a stomach disorder.

The unusual August 7th episode was followed by an equally bizarre occurrence on the following day, when Shea asked appellant for certain documents required for the audit. Appellant thereupon asked Shea to step into appellant's

---

1. Title 18 U.S.C. § 111 provides in pertinent part:

"Whoever forcibly assaults, resists, opposes, impedes, intimidates, or interferes with any person designated in section 1114 of this title while engaged in or on account of the performance of his official duties, shall be fined not more than $5,000 or imprisoned not more than three years, or both."

2. Title 26 U.S.C. § 7212 provides in pertinent part:

"Whoever corruptly or by force or threats of force (including any threatening letter or communication) endeavors to intimidate or impede any officer or employee of the United States acting in an official capacity under this title, or in any other way corruptly or by force or threats of force (including any threatening letter or communication) obstructs or impedes, or endeavors to obstruct or impede, the due administration of this title, shall, upon conviction thereof, be fined not more than $5,000, or imprisoned not more than 3 years, or both, except that if the offense is committed only by threats of force, the person convicted thereof shall be fined not more than $3,000, or imprisoned not more than 1 year, or both. The term 'threats of force', as used in this subsection, means threats of bodily harm to the officer or employee of the United States or to a member of his family."

office and sit down at his desk, which Shea did. After appearing to search for the requested records appellant removed from his desk a gun-cartridge box bearing the label "Smith & Wesson, .38 Chief Special," which he placed on the desk so that the label was facing and visible to Shea, seated opposite appellant. Then appellant, according to Shea, glanced at the gun box and

". . . went into a discourse on the development of the human mind, and he continued that man was basically an uncivilized being, that they [sic] delighted in sports, violence and killing, and that man was basically unpredictable and one never knew what a man might do in a given set of circumstances. He also stated that there is no telling what he might not do if backed into a corner and there was no way out."

Agent Shea further testified that he felt that this was another attempt on appellant's part to intimidate him in the performance of his duties, which he reported to his supervisor.

The incident occurred at a time when appellant possessed a pistol permit and was refusing to accede to Shea's request for production of a key agreement that had been entered into in 1969 between Main Chrysler-Plymouth Corp. and Chrysler Corporation, which set forth basic terms with respect to ownership of Main Chrysler-Plymouth and was directly relevant to the audit. On August 23, 1972, appellant told Shea that appellant and his brother had been investigating Shea and wanted to know why one of the "top" men of the IRS office was conducting the audit. In September 1972 appellant finally turned over the agreement to Shea.

### Discussion

Title 26 U.S.C. § 7212(a) provides in pertinent part that whoever by threats of force endeavors to intimidate or impede an employee of the United States acting in his official capacity is guilty of a crime. Appellant's first contention is that appellant's statements to Agent Shea were too "vague," "ambiguous," "non-specific," "non-direct," and "nebulous" to rise to the level of "threats of force" as defined in § 7212, i. e., "threats of bodily harm to the officer or employee of the United States or to a member of his family." He argues that the only form of such intimidation proscribed by the statute is a directly expressed threat. We disagree.

■■ As a means used to convey an intention to cause bodily harm a threat may be express or implied.[3] A direct expression of that intention, being the most obvious form of threat, is, of course, the type most commonly appearing in cases dealing with prosecutions instituted under § 7212. See, e. g., United States v. Johnson, 462 F.2d 423 (3d Cir. 1972), cert. denied, 410 U.S. 937, 93 S.Ct. 1396, 35 L.Ed.2d 602 (1973); United States v. Rybicki, 403 F.2d 599 (6th Cir. 1968); United States v. Varani, 435 F.2d 758 (6th Cir. 1970). Indeed, while one might wonder why the government would as a matter of prosecutorial discretion undertake prosecution upon lesser evidence, we must recognize that an intent to cause harm may be implied in veiled statements which, depending on the setting, may be even more effective in frightening a reasonable person than would be a brash display of braggadocio. Since the question of whether subtle conduct can amount to a threat of force depends greatly upon all of the surrounding circumstances, including not only the words used but the facial expressions and gestures of the accused, it is peculiarly one for resolution by the jury. Here the jury had before it the entire picture, including the two participants in the drama, both of

---

**3.** Although proof of an implied threat may satisfy Title 26 U.S.C. § 7212 it will not necessarily fulfill the requirements of Title 18 U.S.C. § 111, which (unlike § 7212) prohibits the *"forcible"* assault upon, intimida- tion or impudence of an employee engaged in performance of his official duties. See United States v. Glover, 321 F.Supp. 591, 593 (E.D.Ark.1970).

whom testified. The jury was therefore in a superior position to determine whether appellant's language and conduct constituted a threat of force, after appraising the physical appearance and demeanor of the parties and their conduct in the light of the setting and circumstances. The jury, having been properly instructed that the government had assumed the burden of proving beyond a reasonable doubt that appellant knowingly and intentionally endeavored to intimidate and impede Agent Shea by threats of force as defined in the statute, rendered a guilty verdict. On this record it is not within our province to disturb it.

The second point raised by appellant presents a more difficult question. After testifying to the picture-taking and gun-box incidents Agent Shea was permitted, over appellant's objection, to testify as follows:

"Q. Now, what did you understand him to mean by his statement that he didn't know what he would do if he were cornered and had no escape?

\*     \*     \*     \*     \*     \*

"A. I felt that this was perhaps another attempt to intimidate or to cause me from discharging my duties, and possibly even a threat, in view of the episode of the previous day."

This testimony as to the victim's reaction was admissible with respect to Count I, which charged appellant with forcibly assaulting, impeding, intimidating and interfering with Agent Shea in violation of Title 18 U.S.C. § 111. Proof that Shea was successfully impeded, intimidated or interfered with was essential to establish commission of the alleged crime and, in this regard, evidence of the effect of the threat upon the agent was relevant. See Gornick v. United States, 320 F.2d 325 (10th Cir. 1963). Under closely analogous circumstances we have held admissible evidence of the victim's fear in extortion cases. See, e. g., United States v. Tropiano, 418 F.2d 1069, 1081 (2d Cir. 1969), cert. denied, Grasso v. United States, 397 U.S. 1021, 90 S.Ct. 1258, 25 L.Ed.2d 530 (1970). However, such evidence was not essential to proof of Count II, which was limited to the charge that appellant *endeavored* by threats of force to intimidate or impede Shea and did not require proof that he was successful in the effort. Although the defendant's state of mind was relevant to Count II, that of his victim was not.

Thus the evidence of Shea's reactions was admissible only in support of Count I, of which appellant was acquitted, and not with respect to Count II, upon which he was convicted. In order to avoid any prejudice to appellant from the jury's possible consideration of this evidence in arriving at a verdict on Count II, the proper course would have been for the trial judge to give an instruction limiting the jury's use of the evidence accordingly, since in a close case under § 7212 evidence of the impression made upon the agent by the defendant's conduct might improperly influence the jury. However, we cannot label the court's failure in the present case to give such an instruction *sua sponte* as plain error. Although appellant's counsel excepted to the court's charge, he did not assert this ground or request a limiting instruction. In the absence of such a request appellant cannot now be heard to complain. United States v. Indiviglio, 352 F.2d 276 (2d Cir. 1965) (en banc), cert. denied, 383 U.S. 907, 86 S.Ct. 887, 15 L.Ed.2d 663 (1966).